Florence SCOTT, formerly Florence Mesler Montague, an individual, Plaintiff-Appellant,

v.

WKJG, INC., and National Broadcasting Company, Inc., Defendants-Appellees.

No. 15611.

United States Court of Appeals Seventh Circuit.

May 2, 1967.

Albert L. Jeffers, Fort Wayne, Ind., for appellant.

John E. Hoffman, Fort Wayne, Ind., Eugene L. Girden, New York City, Hoffman, Moppert & Solomon, Fort Wayne, Ind., Coudert Brothers, New York City, for defendants-appellee.

Before DUFFY, Senior Circuit Judge, and CASTLE and SWYGERT, Circuit Judges.

DUFFY, Senior Circuit Judge.

This suit for damages and injunctive relief was brought by the plaintiff for the alleged infringement by defendants of a copyright owned by her.

Plaintiff Scott testified that when she wrote "Discretion" in 1939, she was a housewife living in Grand Rapids, Michigan; that she wrote it as a one-act radio play as a pilot for a proposed radio series, but that "Discretion" was never broadcast as a radio play. She testified further that in 1944, after many hours of drafting and rewriting, she expanded "Discretion" into a two and a half hour three-act play. This is the play which was copyrighted by plaintiff in 1944, and with a few brief additions, was presented by an amateur group in Detroit, Michigan, for two performances in 1946.

The play "Discretion" has never been published, publicly circulated or professionally produced. The validity of plaintiff's copyright is not contested.

Up to the time of the alleged infringing telecast in 1962, plaintiff had made fifteen copies of her work some of which she still had on hand. She had circulated her work among several business agents, but without success.

Mrs. Lois Hire is the author of the allegedly infringing play "Conditional Surrender." It is a half hour TV show which was telecast on May 9, 1962 by National Broadcasting Company (NBC) and station WKJG, Inc. in Fort Wayne, Indiana, in presenting "The Loretta Young Show." Mrs. Hire testified she wrote "Conditional Surrender" in 1960 in California, and that it was based upon an idea given to her by the instructor of an adult TV play-writing class which she attended from 1958 to 1960. She testified she completed the play in a five day, twenty hour period.

Mrs. Hire is a professional writer. She has written twelve plays of which seven have been sold and produced on nationally televised productions such as "Bonanza", "U. S. Steel Hour", "Kentucky Jones" and "The Loretta Young Show."

Mrs. Hire testified she had never known of plaintiff's play nor of the plaintiff until the instant suit was commenced. She testified that she had never been in the State of Michigan, and that prior to 1958, she had had no particular interest in plays or play-writing and had never read any unpublished scripts.

There are similarities in the two plays here involved. Both have the same general stock plot, for each play involves a husband, wife and husband's girl friend situation. It cannot be said that the love triangle plot is, in itself, unique.

Involved in each play is a middle-aged couple having been married for about fifteen years. They have reached a crisis resulting from the husband's involvement with a woman who works in his place of business. In each play the wife apparently accedes to the husband's request for a divorce, but does so in a manner to show to him the disadvantages of such a situation. The wife's terms and her other actions are, in fact, devices by which the wife seeks to defeat her husband's plans for a divorce. In both plays the wife's devices include the requirement that the husband assume the custody of the children, and purchase the wife's interest in the home property.

Also involved in each play is the wife's acquisition of new clothes as a means of attracting men when the wife goes on a hunt for a new husband. There is a further similarity in that the wardrobe suggested by the wife in each case was daring and rather shocking to the husband.

Plaintiff points to certain words and groups of words which, she argues, demonstrate a copying by the defendant. With reference to the suggested divorce, the wife in defendant's play states "Since it has, there's no point in being uncivilized about it. * * *." The wife in plaintiff's play states " * * * We're two civilized people. * * * " Again, the wife in defendant's play says " * * I'll line them up and say 'Boys, your father has found a new playmate' " while the wife in plaintiff's play states " * * The King is dead—long live the King."

Plaintiff also points to the use of the word "brazen." The husband in defendant's play states "I certainly didn't expect this brazen man hunt." In the plaintiff's play the husband states "You sound brazen."

Plaintiff refers to a grammatical error, the alleged use of "I'd" as a contraction for "I had." However, the use of "I'd" in defendant's "Conditional Surrender" was not a contraction for "I had."

Plaintiff makes references to some additional groups of words called by her "key words," and also additional sentences used in defendant's play which plaintiff claims indicate copying. However, the District Court found that there were no identical or copied word for word sentences or passages in the two plays.

The trial court also found the two plays were so significantly different as to sequence, characterization, characters,

scenes, settings and style of writing as to be "two entirely different plays."

In addition, the District Court found there was no evidence or proof of direct access or even the possibility of access to the plaintiff's play by the author or producers of "Conditional Surrender."

■■ A copyright is intended to protect authorship. The essence of a copyright protection is the protection of originality rather than novelty or invention. Wihtol v. Wells, 7 Cir., 231 F.2d 550.

■ It must be remembered that copyright protection does not extend to ideas, plots, dramatic situations and events. Rather, it is limited to the arrangement of words the author uses to express his ideas. Funkhouser v. Loew's, Inc., 8 Cir., 208 F.2d 185, 189, cert. den. 348 U.S. 843, 75 S.Ct. 64, 99 L.Ed. 664; Burnett v. Lambino, S.D.N.Y., 204 F. Supp. 327, 331–332.

■ To establish the infringement of a copyright, the plaintiff has the burden of proving 1) that the accused work was copied from the copyrighted work, and 2) that the author of the accused work unlawfully appropriated protected material from the copyrighted work. Arnstein v. Porter, 2 Cir., 154 F.2d 464, 468.

Without direct proof of access or proof of a reasonable possibility of access, the courts have quite generally held that access and copying may be implied only if the similarities of the two plays are so striking and of such nature as to preclude the possibility of coincidence, accident or independent creation. Twentieth Century-Fox Film Corp. v. Dieckhaus, 8 Cir., 153 F.2d 893, 898–899, cert. den. 329 U.S. 716, 67 S.Ct. 46, 91 L.Ed. 621; Heim v. Universal Pictures Co., 2 Cir., 154 F.2d 480, 487.

The applicable legal principle has been expressed as "In such circumstances, the similarities must be such that copying is not merely suspected, but is established with reasonable certainty." Pinci v. Twentieth Century-Fox Film Corp., S.D. N.Y., 95 F.Supp. 884, 886.

The trial court pointed out that besides the lack of convincing similarities between the two plays, there are numerous significant differences. Included in such differences the Court noted that in "Discretion" the wife is the character most emphasized and she appears in eleven of the twelve scenes of the play, while the husband is in only four of them. By contrast, in "Conditional Surrender", the husband is the character most emphasized and he appears in all fifteen scenes, while the wife appears in seven.

The trial court also observed that twelve of the approximately twenty-six minutes of the accused play involve settings that were in no way present in plaintiff's play, and the remaining settings were typical of plays involving domestic situations.

The trial court specifically found that the alleged similarities are not so striking as to raise the likelihood or the probability that the accused play was copied from the plaintiff's play.

■ The plaintiff argues that the District Court improperly relied upon the testimony of a paid expert witness for the defense in determining whether there were similarities between the two plays. Expert testimony may be received to assist the trier of facts in an infringement action. Arnstein v. Porter, supra. Therefore, the trial court properly considered that testimony as well as the plaintiff's evidence showing alleged similarities, in reaching its decision.

■ The various critical findings of the District Court, some of which we have described, are sustained by the evidence in this case. Certainly, they are not clearly erroneous. We agree with the District Court that the plaintiff has not met the required burden of proof.

In the District Court, NBC raised the question of jurisdiction of the Court as to it. The Court denied the motion of NBC to dismiss the action and to quash service of summons. The briefs make only passing reference to this point. The question was not raised in oral argument. NBC did not file a cross appeal. NBC undertook the defense of its co-defendant. However, if the question

were properly before us, we would sustain the decision of the District Court on this point.

The judgment for the defendants is Affirmed.