### ACUFF–ROSE MUSIC, INC., Plaintiff,

v.

### JOSTENS, INC., Defendant.

No. 95 Civ. 8236(DC).

United States District Court,
S.D. New York.

Dec. 10, 1997.

Abelman, Frayne & Schwab by Robert C. Osterberg, New York City, for Plaintiff.

Briggs & Morgan, P.A. by David C. Forsberg, Karna A. Berg, St. Paul, MN, Berlack, Israels & Liberman L.L.P. by Carole L. Fern, New York City, for Defendant.

## *MEMORANDUM DECISION*

CHIN, District Judge.

In 1990, the country western singer Aaron Tippin released a song entitled "You've Got to Stand for Something." It contained the line, "You've got to stand for something or you'll fall for anything." The song was a hit and rose to number five on the national country charts in February 1991.

In December 1992, defendant Jostens, Inc. ("Jostens"), a company that produces and sells class rings, initiated an advertising campaign built on the theme, "If You Don't Stand for Something, You'll Fall for Anything." The campaign prominently featured this slogan in its promotional materials.

In this case, plaintiff Acuff–Rose Music, Inc. ("Acuff–Rose"), the owner of the Tippin song, contends that Jostens has violated its copyright. Defendant Jostens denies that it copied the song and argues that the lyric in question is derived from an unprotectable cliche. Defendant further maintains that any use of the song constitutes fair use within the meaning of 17 U.S.C. § 107.

Both sides moved for summary judgment, and oral argument was held on July 9, 1997. During the argument, the parties agreed that I should decide the case on the record submitted on the summary judgment motions, without a formal trial. (Tr. at 4–6, 29–30). I have now reviewed the record and considered the issues. The following are my findings of fact and conclusions of law pursuant to Federal Rule of Civil Procedure 52(a).

## *FINDINGS OF FACT*

### A. *The Tippin Song*

The song "You've Got to Stand for Something" was written by Aaron Tippin and Buddy Brock, and recorded by Tippin in 1990. Tippin and Brock assigned to Acuff–Rose all rights and interests in the song on October 10, 1988, and April 1, 1990, respectively. Acuff–Rose registered the composition's words and music with the U.S. Copyright Office on August 15, 1990, and remains the registered owner of the copyright to the Tippin song (Pl.Ex. 1).

The composition "is built around the Theme Lyrics to tell the story of a father's advice to stand for principles." (Pl. Mem. at 2). Its lyrics are as follows:

Now Daddy didn't like trouble, but if it came along

Everyone that knew him knew which side he'd be on

He never was a hero, or this country's shinin' light

But you could always find him standing up

For what he thought was right

He'd say you've got to stand for something or you'll fall for anything

You've got to be your own man not a puppet on a string

Never compromise what's right and uphold your family name

You've got to stand for something or you'll fall for anything

Now we might have been better off or owned a bigger house

If Daddy had done more givin' in or a little more backing down

But we always had plenty just living his advice

Whatever you do today you'll have to sleep with tonight

(Refrain)

Now I know that things are different than they were in Daddy's days

But I still believe what makes a man really hasn't changed

(Refrain)

Oh, you've got to stand for something or you'll fall for anything

(Def.Ex. 54). The line "You've got to stand for something or you'll fall for anything" appears seven times through the course of the tune. Brock's father, William C. Brock, is credited as being the source of the line. (Pl.Exs.3, 4). The song became a country recording hit in 1990–91, rising to number five on the national country hit charts in February 1991. (Prokasy Aff. at ¶ 12). More than 1.3 million recordings of the song have been sold worldwide, and it even became an "anthem" of sorts for the Persian Gulf War. (*Id.*).

## B. *The Jostens Ad Campaign*

In December 1992, Jostens, with the assistance of Kruskopf Olson Advertising Agency ("Kruskopf Olson"), developed an advertising campaign for the 1993–1995 school years based on the slogan: "If You Don't Stand for Something, You'll Fall for Anything." A version of the phrase, "U Got 2 Stand 4 Something," appeared on sales brochures, buttons, and t-shirts. (Stitt Declar. at ¶¶ 11–15). The following paragraph appeared in sales brochures, fliers, and posters:

The song says it best: If you don't stand for something, you'll fall for anything. And one of the best ways to show you stand for something is by wearing a Jostens Class Ring. The ring stands for your school. It stands for the people you know. It stands for the greatest class of all time (yours, of course). And it stands for the things you do to make your class the

greatest. Most of all, it stands for you. The gold, the stone, the inscriptions, they add up to nothing less than a small piece of your personal history. The ring stands for who you are—and that's something worth standing for.

(Pl.Ex. 10; *see also* Pl.Ex. 8 (describing early draft of Jostens slogan as "If you don't stand for something—as the song says—you'll fall for anything")). In addition, Kruskopf Olson wrote the music, narration and lyrics for a promotional video/slide show:

*Music and lyrics:*

Come on

Got to make some changes

Got to make them fast

The way this world is going

How we going to last

We're going to cross the Great Divide

United we stand, together for the [start?]

We've got to stand for what is true

Stand up for me and I'll stand up for you

Just take my side, I'll take your hand

Right is right, we got to stand

*Narration:*

You know what they say. If you don't stand for something, you'll fall for anything. Isn't that the truth? People who don't stand for something, well they lean a little this way, they lean a little that way, they end up falling right over. That doesn't happen when you stand for something. When you have a rock solid sense of who you are and where you're going, when you have values and beliefs and standards and convictions, then you're on a mission and nobody can trip you up. So do yourself a favor and stand for something. If nothing else, you'll have a great view.

*Music and lyrics:*

Once you let your hands get [high, help?]

Got to lift you up inside

If you want to run with me

We can set the whole world free

Yeah, yeah

*Narration:*

Okay. So what's that supposed to mean?

Stand for something. What's to stand for?

Well it doesn't have to be some life or death

thing, like the ozone or the rain forest, the raspberry [Pez?], you could just stand for yourself. If you don't stand for yourself, who will? Or you could stand for your

friends, that's what friends do. From there

you could go all out for your school. You could even help out somebody who doesn't have

the advantages you have, disabled people, old

people and kids who need somebody to look up

to. Hey, they could end up looking up to you. Cuz when you stand for something, they've got something to look up to.

*Music and Lyrics:*

We've got to stand up great and tall

We got to grow but forget the wall

We've got to stand for what is right

We've got to work, we've got to try

We've got to stand for our friends

We'll never go with any wind

We're going to stand here until the end

Right is right, we've got to stand

We'll stand up where the air is clear

We'll never live in ???

We will unite across this land

Right is right, we've got to stand

*Narration:*

It's a Jostens thing. You got to stand for something.

(Stitt Declar. at ¶ 20).

Marla Tipping, General Manager of Special Markets for Jostens and formerly in charge of intellectual property issues for the corporation, did not conduct a prior use search of the slogan "You've got to stand for something or you'll fall for anything" because she considered it to be "the expression of an idea which was not entitled to copyright protection." (Tipping Aff. at ¶ 3). For the same reason, Jostens did not seek a license from Acuff–Rose to use the phrase.

By letter dated September 28, 1994, Suzanne M. Prokasy, Director of Licensing for Acuff–Rose, demanded that Jostens "immediately cease and desist all usage of 'You've got to Stand for Something' in any and all catalogues.'" (Def.Ex. A).

Jostens declined to stop using the slogan. In a letter dated October 20, 1994, Jostens pointed out that "titles and other short phrases or expressions *are noncopyrightable.*" (Def.Ex. B).

On February 1, 1995 Acuff–Rose sent Jostens a second cease-and-desist letter. Acuff–Rose indicated that, in its view, the Jostens' catalog "specifically refers to the Composition and even quotes from the lyric." (Def.Ex. C).

This action followed.

### CONCLUSIONS OF LAW

#### A. *Applicable Legal Standards*

■ It is well-established that "musical works, including any accompanying words," may be copyrighted under 17 U.S.C. § 102(a)(2). A copier will be liable for copying the musical work in its entirety, that is, the composition's words and music together, as well as for copying just the music or the words alone. *See* Paul Goldstein, *Copyright* § 2.8 (2d ed.1996).

■ To prevail on a claim of copyright infringement, a plaintiff must prove two elements: "ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Arden v. Columbia Pictures Indus., Inc.,* 908 F.Supp. 1248, 1257 (S.D.N.Y.1995) (quoting *Feist Publications, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361, 111 S.Ct. 1282, 1295, 113 L.Ed.2d 358 (1991)).

■ Copying, in turn, is comprised of two requirements: actual copying and improper appropriation. Actual copying may be established either by direct evidence or by

circumstantial proof that defendant had access to the protected work and that the allegedly infringing work bears a "probative similarity" to the copyrighted, work. *See Ringgold v. Black Entertainment Television, Inc.*, 126 F.3d 70, 75 (2d Cir.1997). Once actual copying has been established, plaintiff must then demonstrate "improper appropriation"—that "substantial similarities" as to the protected elements of the work would cause an average lay observer to " 'recognize the alleged copy as having been appropriated from the copyrighted work.' " *Durham Indus., Inc. v. Tomy Corp.*, 630 F.2d 905, 912 (2d Cir.1980) (citations omitted); *McDonald v. Multimedia Entertainment, Inc.*, 1991 WL 311921, *2 (S.D.N.Y. July 19, 1991); Goldstein, *Copyright* § 7.3. While "probative similarity" goes to whether copying factually occurred and is largely a qualitative inquiry, "substantial similarity" is a more qualitative assessment as to whether the copying is legally actionable. *See Ringgold,* 126 F.3d at 75.

 Critical to the issue of improper appropriation is that the copied elements of the work are original and nontrivial. "The *sine qua non* of copyright is originality." *Feist Publications*, 499 U.S. at 345, 111 S.Ct. at 1287 (1991). Original, as it is used in copyright, means that "the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal level of creativity." *Id.*

There is no dispute that Acuff–Rose is the registered owner of the copyright to the Tippin song or that plaintiff's copyright is valid. Instead, the main issues of contention are whether defendant has actually copied the composition and, if so, whether the appropriation was improper.

## B. *Actual Copying*

I find, by a preponderance of the evidence, that the similarity of the words, defendant's access to the song's lyrics, the timing of the Jostens campaign, and the references to "the song" prove that Jostens actually copied the song.

First, the Jostens slogan and the Tippin lyric are strikingly similar. Both employ the words, "If you don't stand for something, you'll fall for anything." Indeed, the unstylized version of Jostens' slogan is virtually identical to the theme lyrics of the Tippin song.

Second, Jostens had access to the song. All that need be shown is that Jostens had a " 'reasonable opportunity to view or [hear] plaintiff's work.' " *Stratchborneo v. Arc Music Corp.*, 357 F.Supp. 1393, 1402 (S.D.N.Y. 1973) (quoting *Bevan v. Columbia Broad. Sys., Inc.*, 329 F.Supp. 601, 605 (S.D.N.Y. 1971)). The Tippin song's widespread dissemination and popularity, evidenced by its top five ranking as a country hit at the time Jostens conceived and approved its ad campaign, demonstrates that defendant had ample opportunity to see or hear the Tippin lyrics. *See ABKCO Music, Inc. v. Harrisongs Music, Ltd.,* 722 F.2d 988 (2d Cir.1983) (access inferred where song was number one on best-seller charts); *Fred Fisher, Inc. v. Dillingham*, 298 F. 145, 146 (S.D.N.Y.1924) (composition "gained an enormous vogue, and was sung or played all over the country").

Third, the timing of Jostens' ad campaign further suggests that defendant copied the song. The Tippin song had just enjoyed the height of its popularity when Jostens created its advertising campaign. The proximity in time between creation of the two works thus supports plaintiff's theory of copying.

Fourth, the words "The song says it best" appears in some versions of the approved advertising materials, suggesting that a song served as the source for the Jostens slogan. (Pl.Exs.8–10). Defendant argues that these ads refer not to the popular Tippin song, but to Jostens' own jingle that appears in its video/slide show. This argument, however, is unpersuasive. It is unlikely that Jostens was referring to its own obscure jingle, in light of the immense popularity of the Tippin song at the time Jostens developed and approved its ad campaign.

Significantly, Jostens has presented no factual material to support its claim that the reference to "the song" was to the Jostens jingle. Jostens' Senior Marketing Manager,

Jeanne Stitt, and its Director of Marketing for Scholastic Products, Tim Line, both affirm only that they were unaware of the Tippin song at the time they approved the advertising slogan. (*See* Stitt Declar. at ¶ 21; Line Declar. at ¶ 2). They do not state, however, that they intended to refer to Jostens' own jingle. Nor did Jostens submit any affidavits from its advertising company as to what was intended by the reference to "the song." This collective silence is peculiar, given defendant's insistence—in its memorandum of law but not in any sworn statements—that "the song" mentioned in the materials is the Kruskopf Olson tune.

These factors demonstrate that the Tippin song served as the inspiration for the Jostens slogan and that the phrase "The song says it best" seeks to remind Jostens' customers of the popular country tune. Accordingly, I find that it is more likely than not that Jostens actually copied the line from plaintiff's song.

### C. *Improper Appropriation*

■ My finding of actual copying is not dispositive, however, because plaintiff must still prove improper appropriation. It has failed to do so.

Comparing the works as a whole, a "discerning ordinary observer" would not recognize Jostens' advertising slogan as having been appropriated from the protected elements of the Tippin song. *See Knitwaves, Inc. v. Lollytogs Ltd.*, 71 F.3d 996, 1002 (2d Cir.1995) ("more discerning ordinary observer" test appropriate where work contains protectable and nonprotectable elements); *M.H. Segan Ltd. Partnership v. Hasbro, Inc.*, 924 F.Supp. 512, 520 (S.D.N.Y.1996) (same). That both works employ the identical phrase does not constitute substantial similarity, in light of the written lyric's status as an unprotected cliche and the fundamental differences in the parties' usage of the phrase.

Isolated from Tippin's vocal rendition of the words and melody, the lyric at issue lacks the requisite originality. While especially creative phrases may be protected, there is nothing unique about the use of standing/falling imagery to convey the importance of living a principled life. *See Alexander v. Haley*, 460 F.Supp. 40, 46 (S.D.N.Y.1978) ("[M]etaphors are not subject to copyright protection").

Moreover, the phrase itself is not the offspring of the song's creators. The saying has repeatedly been used to convey the moral lesson that one who does not "stand" for "something" will "fall" for "anything." As defendant has amply demonstrated, the exact saying "You've got to stand for something or you'll fall for anything" enjoyed a robust existence in the public domain long before Tippin employed it for his song's title and in the key lyrics. *See, e.g., Political Quotations: A Collection of Notable Sayings on Politics from Antiquity through 1989* at 133 (Daniel B. Baker ed., 1990) (attributing exact phrase to Ginger Rogers in 1978) (Def.Ex. 13); *Gorton Carruth & Eugene Ehrlich, The Harper Book of American Quotations* 152 (1st ed. 1817) ("[U]nless we stand for something, we shall fall for anything" attributed to Peter Marshall, Chaplain to U.S. Senate in 1947) (Def.Ex. 12B); *The Oxford Dictionary of Quotations* 322 (Angela Partington ed., 4th ed.1992) (attributing statement "Those who stand for nothing fall for anything" to British journalist Alex Hamilton's Nov. 9, 1978 radio broadcast) (Def.Ex. 14); *Respectfully Quoted* 24 (Suzy Platt ed., 1989) (attributing saying to Peter Marshall) (Def.Ex. 12A); Letter to the Editor, St. Petersburg Times, Jan. 24, 1990 ("If we don't stand for something, we will fall for anything.") (Def.Ex. 28); Letter to the Editor, Wash. Times, July 6, 1989 ("It has been said that 'the person who won't stand for something will fall for anything'") (Def.Ex. 26). The saying even appears in the chorus of John Cougar Mellencamp's song entitled "You've Got to Stand for Somethin.'" (Def.Ex. 19) ("You've got to stand for somethin' or you're gonna fall for anything"). Mellencamp's song was recorded, copyrighted and released as part of his *Scarecrow* album in 1985, long before the Tippin song was recorded.

The uses of the phrase, both before and after Acuff–Rose registered the Tippin song, are far too numerous to be recounted here, and cannot all be dismissed as "isolated references" or mere derivatives of Tippin's

song. Additionally, that the saying has been attributed to a wide range of persons, including Peter Marshall, a former Chaplain of the U.S. Senate (Def.Exs.12A, 12B, 20), Ginger Rogers (Def.Ex. 13), Martin Luther King, Jr. ("It was Martin Luther King, Jr. who said on one occasion, 'If you don't stand for something, you will fall for anything,'" Representative John Lewis of Georgia, *All Things Considered* (NPR radio broadcast, Nov. 17, 1993)) (Def.Ex. 41), and Malcolm X ("As Malcolm X said, if you don't stand for something, you'll fall for anything," cited in Joseph P. Blake, Theater Review, Phila. Daily News, Jan. 29, 1987) (Def.Ex. 23), also strongly suggests that it is an idiom deeply-ingrained in the public consciousness.[1] As a well-worn cliche or motto, the "ordinary" phrase may be freely quoted or otherwise used without fear of infringement. *See Salinger v. Random House, Inc.*, 811 F.2d 90, 98 (2d Cir. 1987); *see also Perma Greetings, Inc. v. Russ Berrie & Co.*, 598 F.Supp. 445, 449 (E.D.Mo.1984) ("Hang in there" not protectable); *Stratchborneo*, 357 F.Supp. at 1404 (phrase "MOJO" is "so commonplace as to be substantially within the public domain");[2] *O'Brien v. Chappel & Co.*, 159 F.Supp. 58, 59 (S.D.N.Y.1958) ("common phrase" "night and noon" not subject to copyright protection).

Tippin and Brock did not embellish the words in any way or otherwise infuse them with any "creative spark." *Feist Publications*, 499 U.S. at 345, 111 S.Ct. at 1287. Thus, Acuff–Rose's subsequent copyrighting of lyrics that simply replicate the common saying does not take it out of the public sphere, but only offers protection to Tippin's "original use of [the] idea[], the 'expression'

of [the] idea[]." *Stratchborneo*, 357 F.Supp. at 1404; *see also Rogers*, 960 F.2d at 307 ("[T]hat a whole work is copyrighted does not mean that every element of it is copyrighted; copyright protection extends only to those components of the work that are original to the creator."). In other words, the scope of plaintiff's copyright is limited to the unique musical composition or story as told through the lyrics and the music, and to the words as set against the original melody; legal protection also extends to Tippin's vocal rendition of the phrase, but in this case, not to the unoriginal line alone.

Plaintiff in essence contends that none of its lyrics may appear in commercial settings without its permission, regardless of the content of those lyrics. But if I were to accept plaintiff's position, every unoriginal phrase, once used in a musical composition, would allow the copyright holder a monopoly over the cliche's use regardless of the context in which it is used in the song or in the allegedly infringing material. Acuff–Rose's copyright does not grant it such an expansive monopoly over material in the public domain. *See Norman v. Columbia Broadcasting System*, 333 F.Supp. 788, 797 (S.D.N.Y.1971) ("[M]aterial constituting historical facts, material which is in the public domain, isolated words or phrases, [and] ideas ... which are not original with plaintiff ... are not copyrightable."); *Alexander*, 460 F.Supp. at 46 (use of "stock ideas" not actionable). Because the Tippin lyric is a common motto, plaintiff's use of the idiom, no matter how many times it appears in Tippin's song, does not transform the words themselves into protected material.

---

1. The idiom may have its origins in the Bible, 1 Corinthians 10:12: "Let him that thinketh he standeth take heed lest he fall." The disputed version of this saying has been most frequently attributed to Peter Marshall, a former Chaplain of the U.S. Senate. Marshall has been quoted as offering the following prayer at the opening session of the Senate on April 18, 1947: "Give us clear vision that we know where to stand and what to stand for—because unless we stand for something, we shall fall for anything." (Def.Exs.12A, 12B). A biblical origin for the saying would explain its wide use across the country and by such disparate public figures and private individuals.

2. For those unfamiliar with the phrase "MOJO," see Judge Brieant's discussion of MOJO in *Stratchborneo*, 357 F.Supp. at 1396:

 MOJO is a collective noun used to describe one or more talismanic objects believed to have power intrinsic to their nature, and believed able to impart power, or ward off evil or misfortune by being worn close to the body of, or possessed by, the person to whom the MOJO appertains. A simple example of MOJO would be a rabbit's foot. Other examples of MOJO ... include such amulets as black cat bones, shrunken heads, lodestones, half dollar with seeds, four leaf clover, ashes, blacksnake skin, strands of hair and teeth.

Furthermore, Jostens' use of the phrase does not evoke any of the core themes original to the Tippin song and protected by plaintiff's copyright. As plaintiff acknowledges, the song represents a moral lesson in the form of a father's advice to his son to live a principled life. The son is repeatedly reminded to "be [his] own man," "uphold [the] family name," and "never compromise what's right." (Def.Ex. 54). In marked contrast, Jostens' ads extol the virtues of wearing a Jostens class ring as a means of "standing for something." The Jostens class ring itself "stands" for the student's high school and class, the people the student knows, and the achievements of the student and her classmates. In turn, by wearing a Jostens ring, the student "stands" for himself, his friends, and his family. Neither the Jostens video/slide show nor the promotional literature contains any theme resembling that of a father-son morality tale. The "total concept and feel" of the two works thus differ dramatically. *See Kretschmer v. Warner Bros.*, 1994 WL 259814, at *9 (S.D.N.Y. June 8, 1994).

For these reasons, Acuff–Rose has not demonstrated "substantial similarity" between protected elements; instead, it has shown only the copying of an unprotected cliche and "mere generalized ideas or themes." *Warner Bros. Inc. v. American Broadcasting Companies*, 654 F.2d 204 (2d Cir.1981). Accordingly, Acuff–Rose has failed to prove that Jostens infringed its copyright to the composition. Because I find that Jostens did not illegally appropriate protected elements of the Tippin song, I need not reach defendant's affirmative defense of fair use.

### CONCLUSION

The complaint is dismissed with prejudice. The Clerk of the Court shall enter judgment in favor of defendant, with costs and without attorneys' fees.

SO ORDERED.